# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ERIC D. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 1:10-cv-256-JMS-MJD |
| | ) |
| JENNIFER SMITH et al., | ) |
| | ) |
| Defendants. | ) |

### Magistrate Judge's Report and Recommendation and Proposed Memorandum of Decision Regarding Affirmative Defense that Plaintiff Failed to Exhaust Administrative Remedies

On August 21, 2012, the Honorable Jane Magnus-Stinson, Judge, issued an Order of Reference pursuant to 28 U.S.C. § 636(b)(1)(B) directing the undersigned to recommend the proper disposition of the affirmative defense that plaintiff Eric D. Smith failed to exhaust his administrative remedies prior to filing this lawsuit. Summary judgment was previously denied on the affirmative defense, and an evidentiary hearing was conducted on August 23, 2012.

Being duly advised, the undersigned recommends that the defendants' affirmative defense be denied for the reasons set forth below.

### I. Background

This is a civil rights action pursuant to 42 U.S.C. § 1983 in which Eric Smith alleges that the defendants, officials at the New Castle Correctional Facility ("New Castle"), violated his constitutional rights by providing inadequate access to the courts and by retaliating against him. The claims which remain are those seeking damages from Jennifer Smith and Daphne Tester.

The defendants assert as an affirmative defense that Smith failed to comply with the exhaustion of administrative remedies requirement of the Prison Litigation Reform Act ("PLRA") prior to filing this action. See 42 U.S.C. § 1997e(a). The defendants contend that Smith failed to file a grievance regarding his retaliation claim and therefore failed to exhaust his available administrative remedies. Smith counters that he did file grievances against prison staff and kept copies of those grievances.

## II. Discussion

### A. The Prison Litigation Reform Act

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S. Ct. 2378, 2385 (2006) (footnote omitted). "In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Nonetheless, the prisoner will be found to have exhausted available administrative remedies if prison officials ignored, obstructed, or mishandled the grievance filed or sought to be filed by the prisoner. *See id.,* at 813 ("Because Dole took all steps necessary to exhaust one line of administrative review, and did not receive instructions on how to proceed once his attempts at review were foiled, in the factual context of this case, he has exhausted his administrative remedies under the PLRA.").

On the other hand, if it is the prisoner who has made a mistake in utilizing the grievance process then the prison will be found not to have exhausted available administrative remedies. *See Pozo*, 286 F.3d at 1023-24 ("Any other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective . . ."); *Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002) (prisoner did not exhaust when, after he did not receive the relief he was promised, he did not appeal to the next level of review); *Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002) (prisoner's appeal properly denied as untimely when he had received notice of denial of a claim yet failed to appeal that claim until his other claims had also been denied).

The failure to exhaust as required by the PLRA is an affirmative defense. It is a defendant's burden to prove that a prisoner has not exhausted available administrative remedies. *See Jones v. Bock*, 127 S. Ct. 910, 921 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). The question of exhaustion is one which the court is to decide pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

**B. The Evidence**

1. At the time pertinent to the events and claim in this case, Eric Smith was confined at New Castle. New Castle is a prison operated under a contract issued by the Indiana Department of Correction ("DOC"). The grievance policies referred to in this Entry are those established by the DOC and were in effect at New Castle.

2. New Castle has a grievance policy that inmates may use to attempt to resolve complaints regarding the conditions of their confinement. Under the grievance policy, an inmate must first attempt to informally resolve his complaint with the case management team. If the inmate is unable to informally resolve the issue, he may then file a grievance within 20 days. The filing of a formal grievance is the second step in the grievance process at New Castle. If the inmate is not satisfied with the response, he may appeal to the DOC.

3. New Castle utilizes the Offender Grievance Review and Evaluation System, an electronic system that stores information regarding inmate grievances. This is referred to as the OGRE system.

4. Grievances may be placed by an inmate in a box designated as a collection point for grievances until picked up and delivered to the grievance office. Inmates also may hand grievances to staff, who are then expected to deliver the grievance to the grievance office. Once received in either of these fashions, the grievance is examined and if it is in proper form—for example, signed and dated—it will be entered into the OGRE system and assigned a grievance number. If it is not in proper form it will not be entered into the OGRE system, but will be returned to the inmate via a state form 45475 with some explanation—for example, that the form was not signed or that the subject is not grievable. The inmate has five days in which to correct the defect in the grievance and resubmit it. If resubmitted, the same process is followed. It is also true, of course, that if a grievance is not delivered to the grievance office it will not be examined and entered into the OGRE system.

5. Smith was aware of the grievance policy and process described above.

6. There came a point after July 2008 when Smith began having problems with grievances he prepared and delivered to officers in his housing unit at New Castle. His problem consisted of those grievances, on occasion, not being either acknowledged or returned to him. Smith had no control over what became of a grievance once it left his possession, even if it left his possession in a fashion which the grievance process contemplated, *i.e.,* by handing the grievance to a staff member or placing the grievance in a designated box.

7. In order to document his submission of grievances within the limits of his confinement, Smith started a course of conduct in which he would fill out two grievance forms with the identical grievance. This was done on those occasions when Smith had a blank grievance form on which to write the identical grievance. He

would deliver one copy to staff and would keep the other copy himself. In the case of the copy he kept, he would mark it "copy 2 of 2." By doing so, Smith could establish a record of the grievances he submitted, whether they were acknowledged or not.

8. In the case of a grievance Smith submitted but which was not acknowledged, there was no first level response and he was unable to pursue an appeal. It is true that staff was required to respond to a grievance within a specific period of time and that staff's failure to do so entitled the offender to move to the next stage of the process, but this path could be taken only as to grievances which made it into the OGRE system.

9. It is conceded by the defendants that Smith filed the grievance identified as No. 45932 and that he pursued that grievance to its completion. The defendants concede the same as to grievance No. 46053. Each of these grievances presented to New Castle authorities concerns which relate to claims in this case.

10. There is no OGRE system documentation as to the remaining two claims in this case, but Smith submitted grievance forms as to these remaining two claims. These were not acknowledged, not returned as deficient or improper, and not entered into the OGRE system. Smith had no control over the handling, delivery, or other disposition of the grievances regarding these remaining two claims, but did utilize the grievance procedures available to him with respect to the remaining two claims.

### III. Conclusion

Given this evidence, the undersigned finds that Smith submitted grievances concerning every claim remaining in the case by placing the grievances in the prison mail system or by directly delivering his grievances to guards or other staff. Accordingly, he exhausted all of his available administrative remedies even as to grievances which were not thereafter entered into the OGRE system. The defendants have failed in meeting their burden to show otherwise as to any of the four claims. The undersigned recommends that the defendants' affirmative defense of failure to exhaust administrative remedies be denied.

Consistent with the foregoing, the magistrate judge also recommends that the ancillary motion to strike the use of Mike Smith as a witness [121] and the motion for judgment as a matter of law [122] be **denied as moot**.

**IT IS SO ORDERED.**

Date: 10/18/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

**Bruce Benjamin Paul**
**bpaul@stites.com**

**Eric D. Smith**
**112675**
**Westville - CF**
**Inmate Mail/Parcels**
**5501 South 1100 West**
**Westville, IN 46391**